A. R. FENSTER, APPELLEE, V. HAROLD ISLEY, APPELLANT.

11 N. W. (2d) 822

FILED NOVEMBER 12, 1943. No. 31648.

*E. O. Richards,* for appellant.

*P. J. Heaton* and *R. L. Smith, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Deuel county by A. R. Fenster, as plaintiff, against Harold Isley, as defendant, to permanently enjoin the defendant from entering on certain lands in Deuel county for any purpose whatsoever and for a determination that the defendant has no interest in certain wheat growing on said lands which

the defendant had seeded. From a finding for the plaintiff and permanently enjoining the defendant from molesting the plaintiff's possession of the premises but not determining the rights of the parties to the wheat, the defendant has appealed.

For the purpose of this opinion the plaintiff, A. R. Fenster, will be referred to as the appellee and the defendant, Harold Isley, as the appellant.

The record discloses that prior to March 1, 1942, J. E. Blevins was the owner of the southwest quarter of section one (1), township fourteen (14) north, range forty-six (46) west of the sixth P. M., in Deuel county, Nebraska, and for some 14 or 15 years prior thereto appellant together with his father had been farming this land under a year to year oral contract, except the last 4 or 5 years thereof when he farmed it by himself. On February 26, 1941, J. E. Blevins, who lived at Grand Island, wrote the appellant at Lodgepole, Nebraska, and which letter the appellant received, that he was going to rent the land to appellee commencing March 1, 1942, and for him not to do any summer fallowing but that appellee would do it. On May 1, 1941, Blevins entered into a one-year written lease with appellee for these lands being from March 1, 1942, to March 1, 1943. Blevins again sent appellant a letter on May 12, 1941, which he registered and which appellant received, and advised him not to sow wheat and that he was terminating the lease. However, appellant summer fallowed the ground and put in 60 acres of wheat. On March 1, 1942, appellee went into possession of the quarter-section and put in 65 acres of corn, 8-10 acres of rye, and the balance in barley. When, in June of 1942, appellant, who lives in Garden county, Nebraska, advised appellee that he was going to enter on the premises in order to harvest the 60 acres of wheat, the appellee started this action and while a temporary injunction was in force harvested about two-thirds of the wheat. On August 1, 1942, the temporary injunction was dissolved on appellant's motion and then appellant harvested the balance. Both appellee and appellant have delivered to Tuep-

ker, the then owner, his share of the crop harvested. Subsequently, when the matter was tried, the defendant was permanently enjoined but the rights of the parties to the wheat were not determined.

The first question presented by this appeal is, did the district court for Deuel county have jurisdiction of the action? The real estate involved was in Deuel county. The appellant was not a resident thereof but of Garden county and not in Deuel county on the day the action was commenced. Subsequently, he was served in Deuel county. Under section 20-401, Comp. St. 1929, entitled "Actions, When Brought Where Property is Situated," we have held in *State v. Central Nebraska Public Power and Irrigation District*, 140 Neb. 471, 300 N. W. 379: "It is clear from the above quoted provisions of the statutes, and others to which reference will be made, that the legislative intent is generally that the venue of actions involving the determination of the title to land, rights and interests therein and damages thereto, shall be in the county wherein the land lies, and that the location of the land is a superior consideration to the location of the parties in determining the proper venue for such actions." Under this statute we have also held that: "All actions to recover damages for any trespass upon or any injury to real estate shall be brought only in the county where such real estate or some part thereof is situated." *Dryden v. Peru Bottom Drainage District*, 99 Neb. 837, 158 N. W. 54. Since the determination of a proceeding to enjoin trespassing necessarily involves the determination of the title or the right to possession of the lands involved, therefore, under the provisions of our statute, jurisdiction lies in the county where such land is situated.

The second question presented by this appeal is, can the appellee maintain this action? The appellant cites the general principle that injunction will not lie to recover the possession of real property and cites many cases of this jurisdiction wherein we have held that injunction is not available to enforce legal rights where there is a plain, adequate

and speedy remedy at law and therefore not a substitute for forcible entry and detainer or ejectment. But those cases are not applicable here for the appellant was neither in possession nor did he have a right to possession. Appellee had a written lease from the owner from March 1, 1942, to March 1, 1943. More than six months prior to March 1, 1942, in February and May of 1941, the appellant, who was a tenant from year to year, was notified that his tenancy would be terminated on March 1, 1942. Pursuant thereto he relinquished his possession of the lands prior to March 1, 1942, and the appellee went into possession. As held in *Critchfield v. Remaley*, 21 Neb. 178, 31 N. W. 687: " * * * the tenancy (year to year) can only be terminated by the agreement of the parties, express or implied, or by notice given, six calendar months ending with the period of the year at which the tenancy commenced." Therefore, after March 1, 1942, the appellant had no further right to the possession of the premises by reason of his tenancy from year to year and appellee was in possession under his lease and entitled to enjoin any trespass thereon during the terms thereof if the facts entitled him thereto.

Was the appellee entitled to a judgment permanently enjoining the defendant from trespassing on the lands involved? In 28 Am. Jur. 318, sec. 127, we find the following: "As to the present-day view of the situation, it has been remarked that the tendency of recent decisions is to enlarge, rather than to narrow, the class of cases in which a court of equity will interfere to prevent a threatened trespass." As stated in *Hagadone v. Dawson County Irrigation Co.*, 136 Neb. 258, 285 N. W. 600: " 'Equity will afford relief by the process of injunction against repeated acts of trespass, especially where committed under a claim which indicates a continuous and constant repetition of it.' *Hackney v. McIninch*, 79 Neb. 128, 112 N. W. 296." And in *Hackney v. McIninch, supra*: "It is now well settled that injunction is a proper remedy, particularly when, as in this case, the injury is of a continuous nature and committed under a claim which indicates a continuance or frequent

and constant repetition of it." And as stated in *Ayres v. Barnett*, 93 Neb. 350, 140 N. W. 634: "Defendant contends that the decree must stand or fall absolutely upon the question of the insolvency of defendant Barnett, and argues that the evidence is clearly insufficient to sustain the charge of such insolvency. We do not think this question enters into the case. If the land belonged to plaintiff, and Barnett had trespassed upon the same, and was threatening to trespass further by cutting down the timber, plaintiff was entitled to restrain him from so doing, regardless of the question as to whether or not he was insolvent. If he were worth a million, plaintiff would not have to submit to such trespass and content himself with an action for damages." In a similar case, *Meyers v. Schmidt*, 103 Neb. 475, 172 N. W. 352, where the defendant claimed the right of farming the land on which the plaintiff held the lease, we affirmed the action of the lower court restraining the defendant, stating: "The rule seems to be that, where the nature and frequency of the trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land, an injunction will be granted. *Sillasen v. Winterer*, 76 Neb. 52; *Hackney v. McIninch*, 79 Neb. 128." And so in the instant case, where the appellant threatens to enter and trespass upon lands for the purpose of harvesting 60 acres of crops, the right to possession of which is in the appellee, he thereby threatens to substantially destroy the appellee's rights of possession and an injunction permanently enjoining him from so doing was properly granted.

The judgment of the lower court is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.