BOLZER, Appellant v. HAMILTON, Respondent

(103 N.W.2d 183)

(File No. 9769. Opinion filed May 13, 1960)

Rehearing denied August 17, 1960

**Gunderson, Farrar & Carrell,** Rapid City, for Plaintiff and Appellant.

**M. Q. Sharpe,** and **John W. Larson,** Kennebec, **Clinton G. Richards,** Sioux Falls, for the Defendant and Respondent.

ROBERTS, P.J. Plaintiff in this action sought an injunction to restrain defendant from entering upon a described 640 acres of farm land in Bennett County. The basis for the relief as pleaded by the plaintiff is that he had a leasehold interest and possession by virtue of a written lease dated March 14, 1955, for a five-year period terminating February 28, 1961, and that defendant claiming an interest in the premises adverse to the plaintiff entered thereon with farming equipment and declared it his intention to assume possession. The court found generally in favor of the defendant; that plaintiff did not have a valid lease after February 28, 1956, and had no interest in crops grown on the land after that date; and that plaintiff wrongfully harvested a crop of wheat on this land in July of that year and converted the same to his own use. The court held that the plaintiff should be permanently enjoined from asserting and claiming any right, title, or interest in the land and that defendant was entitled to recover on his counterclaim the sum of $15,216, the value of the wheat wrongfully taken from possession of the defendant. From the judgment entered accordingly, plaintiff appeals.

The material facts for the purposes of this appeal are as follows: Title to the land involved was held by the United States Government in trust for the heirs of an Indian allottee. The United States District Court in this state rendered a judgment dated July 12, 1956, in an action entitled The United States of America v. Fred Bolzer and Lydia Bolzer, decreeing that the aforementioned lease dated March 14, 1955, was void for the reason that the same had not been approved by a representative of the Department of Interior. The owners of the land entered into a written lease with defendant Hamilton on July 5, 1955, for a term of five years commencing March 1, 1956, and this lease was approved by the Superintendent of the Indian Agency at Pine Ridge. Plaintiff during the year 1955 summer fallowed approximately 300 acres of this land. Defendant relying on a clause contained in plaintiff's lease terminating February 28, 1956, which permitted fall seeding by the owners, entered

upon the land in September 1955 to seed the summer fallowed land to winter wheat. Claiming wrongful interference with his possession of the leased premises, plaintiff Bolzer commenced a separate action for injunctive relief. Hamilton having seeded the remainder of the field after service of temporary restraining order in that action was found guilty of contempt. The court held that Hamilton had no rights under the fall seeding clause not having obtained consent of the owners.

The summons and complaint in the pending action were served on February 28, 1956, the day before the commencement of the term of defendant's lease. Defendant answered denying generally that plaintiff had right of possession and prayed for a dismissal of the complaint. July 14, 1956, the date plaintiff re-entered the land to harvest the wheat, defendant Hamilton in a separate suit obtained a temporary restraining order enjoining Bolzer from harvesting the wheat and this order was served when there were about 15 acres that had not been harvested.

After notice and hearing the court on September 17, 1956, granted motion for leave to serve and file an amended answer and counterclaim. Plaintiff pending the application to amend moved to dismiss the action. Defendant sought by the counterclaim return of the wheat harvested or its value at the time of the taking.

Plaintiff contends (1) that the court erred in denying his motion to dismiss the action and permitting defendant to serve and file _an amended answer and counterclaim; (2) that the court erred in signing findings prepared by counsel for the defendant without service of the proposed decision upon the adverse party; and (3) that the court erred in concluding that plaintiff did not have a right to remove crops growing at the time of the termination of his tenancy.

SDC 33.0911 provides that a counterclaim must arise out of one of the following causes of action: "(1) A

cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action; (2) In an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action. * * *" Subdivision 1 of this section does not limit a counterclaim to causes of action based upon contract. The term "transaction" as used therein is broader in meaning than the word "contract" and includes torts. Northwestern Port Huron Co. v. Iverson, 22 S.D. 314, 117 N.W. 372; Longpre v. Schmele, 64 S.D. 70, 264 N.W. 201. A cause of action, whatever its nature, arising out of the transaction set forth in the complaint or connected therewith, in favor of the defendant and against plaintiff, is a proper counterclaim notwithstanding it was not in existence at the time of the commencement of the action. Tuthill v. Sherman, 32 S.D. 103, 142 N.W. 257. The lawfulness of plaintiff's possession was the foundation of both the complaint and counterclaim. Defendant's cause of action for conversion of the wheat was a proper counterclaim because it both arose out of the transaction and was connected with the subject of the action.

■ It appears from the record that the court in a memorandum opinion dated January 6, 1958, after discussing the evidence and the issues of law presented stated: "Findings of Fact, Conclusions of Law, and Judgment may accordingly be submitted, awarding defenddant $15,216 with interest at the legal rate from July 14, 1956, together with taxable costs." Thereafter on January 14, 1958, the court signed findings of fact and conclusions of law submitted by counsel for the defendant, but not previously served on opposing counsel, and rendered judgment thereon. July 3, 1958, a motion to vacate the findings, conclusions and judgment was heard and denied. Plaintiff contends that the judgment should be reversed because he was not served with the proposed findings of fact and conclusions of law.

SDC 33.1405 provides: "At the time a cause is submitted the Judge may direct any or all of the parties to prepare a proposed decision consisting of findings of fact and conclusions of law and fix a time for presentation thereof, not less than ten days after such direction. The party or parties directed to prepare such decision must prepare and serve such proposed decision upon all adverse parties at least five days prior to the time fixed for presentation to the Court." This section independently of the provisions quoted provides that at any time before the court has made and filed a decision a party may notify the court orally or in writing that he desires to propose a decision or findings of fact upon any issue in the case. Plaintiff at no time before decision proposed or requested findings and did not notify the court orally or in writing that he desired to do so. While there may have been a violation of the rule with respect to service of proposed findings and conclusions upon opposing counsel, we do not believe that the error entitles plaintiff to a reversal of the judgment. It is not claimed that the material and controlling facts were not found by the court or that right of review of all issues involved have not been preserved. It is clear from the record that the rights of plaintiff were in no manner prejudiced.

Plaintiff contends that he was rightfully in possession of the land in question in 1955; that he had summer fallowed approximately 300 acres in preparation for fall seeding; that it was judicially determined that when defendant entered upon the land in the fall of that year to seed wheat that he was a trespasser; that defendant as a trespasser acquired no title or interest in crops sown by him; and that plaintiff had the right to harvest crops growing at the time of the termination of his tenancy.

 It is clear that the doctrine of emblements recognized by statute, SDC 38.0405, does not here apply. This statute upon which appellant relies reads as follows: "A tenant for years or at will, unless he is a wrongdoer by holding over, may occupy the building, take the annual

products of the soil, work mines and quarries open at the commencement of his tenancy, and cultivate and harvest the crops growing at the end of his tenancy." The right of emblements is limited to those situations where the tenant has an uncertain interest which was determined after seeding and before severance. Cf. Strand v. Boll, 44 S.D. 228, 183 N.W. 284, 15 A.L.R. 652. By the common law, "Emblements are corn and other crops of the earth which are produced annually, not spontaneously but by labor and industry. * * * The doctrine or right of emblements entitles one who holds land for a period subject to termination at a time which he cannot ascertain beforehand to remove from the land after the termination of his tenancy the annual crops or emblements which he has planted thereon prior to such termination, if the termination is brought about without any fault on his part or without any act of his intended to bring about such a result." 15 Am.Jur., Crops, § 24; see also Annotation: 141 A.L.R. 1240.

In Peterson v. Vak, 160 Neb. 450, 70 N.W.2d 436, 439, 51 A.L.R.2d 1221, a tenant who seeded winter wheat in the fall of 1951 after notice by his landlord that his tenancy would terminate the following March claimed that he had the right to re-enter the land for the purpose of harvesting the wheat. Rejecting such claim the court said: "Appellee had an absolute right to till, plant wheat, and use the land until March 1, 1952, but he was charged with knowledge that his status in reference to it would on that date completely and finally terminate and any crop planted that did not mature or was not disposed of by him before that date would be his loss. The matters relied upon by appellee as recited above are of no significance in this litigation. This court spoke of the unimportance of quite similar matters in Vance v. Henderson, 141 Neb. 766, 4 N.W.2d 833, 834, as follows: 'In the absence of reservations or restrictions, a tenant is entitled to the exclusive possession and use of the demised premises and may even maintain trespass against his landlord. There is nothing in this record to create a bar to the defendant planting

wheat on the premises if he saw fit to do so. If, as plaintiff contends, the defendant's lease expired on March 1, 1942, and he had not used or otherwise disposed of the wheat, he ran the risk of losing his labor and seed.' " See also Peterson v. Vak, 169 Neb. 441, 100 N.W.2d 44. We need not consider the effect of the reservation in plaintiff's lease which permitted the leased land to be seeded by the owners to fall grain. Defendant entered into possession of the part of the leased premises here involved and tilled and cropped the land which had not been seeded to wheat the previous fall. He was rightfully in possession and entitled to harvest the crops thereon.

Judgment appealed from is affirmed.

All the Judges concur.